IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ALLEN DOIEL,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | No. 2:20-CV-0602-TLN-DMC-P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a federal prisoner proceeding pro se, brings this civil rights action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA" or "Act"). Pending before the Court are Defendants' motions to dismiss. ECF Nos. 41, 42. Plaintiff has filed oppositions to both motions. ECF Nos. 43, 44, 48, 49, 52, & 53. Defendants have filed replies. ECF Nos. 47, 50.

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998). If a complaint is accompanied by attached documents, however, the court is not limited by the allegations contained in the complaint. Durning v. First Bos. Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The Court may consider documents: (1) whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see id.; (2) whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I. BACKGROUND

### A. Procedural History

This action proceeds on Plaintiff's original complaint. See ECF No. 1. Plaintiff names the following as defendants: (1) Dr. Cezary Kuprianowitcz; (2) Dr. Kenneth Fussell; (3) Dr. Radesh Gutta; (4) Dr. D. Alfred[1]; (5) Dr. A. Rodriguez-Espada; and (6) the United States. See id. This matter was originally filed in the United States District Court for the North District of Texas, Fort Worth Division. That court issued an order severing Plaintiff's claims, transferring all claims against Defendants Kuprianowitcz, Fussell, and Gutta to the Abeline Division, transferring all claims against Defendants Allred and the United States to this Court to proceed under Bivens and the FTCA, and retaining jurisdiction over Plaintiff's claims against Defendant Rodriguez-Espada. See ECF No. 18. The action in this Court, therefore, proceeds against Defendants Allred and the United States only. Both now separately move to dismiss.

### B. Plaintiff's Allegations

Generally, Plaintiff claims medical malpractice relating to his eye injury, providing the wrong medication caused permanent liver and kidney damage, failing to seek surgery for his shoulder injury and cruel and unusual punishment for allowing Plaintiff to remain in pain while awaiting surgery. See ECF No. 43, pg. 6. As to Dr. Allred, Plaintiff alleges denial of adequate medical treatment while he was housed at the Federal Correctional Institute in Herlong (FCI-Herlong), California. See ECF No. 1, pgs. 9-11, 14-17, 65. Plaintiff states that, while a federal inmate in Texas in August 2016, he was assaulted by three inmates while he slept and severely injured. See id., pg. 7. Plaintiff was then transferred to FCI-Herlong in January 2017. See id., pg. 9. By January 30, 2017, Plaintiff had lost visual acuity as a result of the assault

---

[1] Defendant Dr. D. Allred is incorrectly named in the complaint as D. Alfred. The Court will refer to this Defendant by his correct name.

in August of the prior year. See id. In August 2017, Plaintiff was seeing turquoise floaters in his right eye. See id., pg. 10. Plaintiff next makes several allegations of medical negligence occurring in 2018. See id., pgs. 10-11. In February 2018, Plaintiff continued to report blurred vision and other problems stemming from the August 2016 assault. See id. As of March 5, 2018, Plaintiff has still not been seen by a doctor at FCI-Herlong. See id. Plaintiff states that he continued to suffer problems as of March 6, 2018, and that "Dr. D. Alfred DO-CD has not yet ameliorated issue." Id. Plaintiff next claims that Dr. Allred had still not ordered an MRI as of June 7 and 9, 2018. See id. at 11.

### C. Plaintiff's FTCA Administrative Claims

Plaintiff alleges that he has exhausted all administrative requirements necessary for an FTCA claim. See ECF No. 1, pg. 12. Plaintiff filed two administrative tort claims based on the assault encountered while a federal inmate in Texas. See ECF No. 1, pg. 7; ECF No. 41-1, pg. 3. The first administrative claim, TRT-SCR-2018-01760, dated December 11, 2017, describes the assault encountered while a federal inmate in Texas occurring on August 23, 2016, and notes the amount of claim as $250,000.00 ("Claim 1"). See ECF NO. 41-3, pg. 2. Claim 1 is based on a personal injury that resulted because "BOP staff failed to prevent the assault with security and failed to stop the assault while in progress." Id. Claim 1 was received by the Bureau of Prisons on December 27, 2017. See id. On May 17, 2018, Plaintiff was sent a letter notifying him that an investigation of his claim had been conducted and it was determined that Plaintiff had not "sustained any compensable physical injury caused by the wrongful or negligent act or omission of any officer or employee" of any the government within the scope of employment. ECF No. 41-5, pg. 2. Plaintiff was notified in this letter that he had six months from the date of mailing the determination letter with which to file a federal lawsuit. See id.

The second administrative claim, TRTWXR-2018-05551, was signed and dated on December 14, 2017, although apparently not received by the Bureau of Prisons until June 27, 2018 ("Claim 2"). See ECF Nos. 41-1, pgs. 3-4 & 41-8, g. 2. Claim 2 described the same assault occurring on August 23, 2016 and noted the amount of claim as $250,000.00. See id. Claim 2 is based on the same personal injury as Claim 1 and adds that "[a]fter my first medical diagnosis,

4

the attending physician clearly and plaining stated that surgery was needed immediately" but that "never happened, causing further symptoms and medical degradation." Id. Plaintiff asserts that he was injured as a result, in part, from the "negligence of the BOP in their security" and "medical malpractice and/or unnecessary delays in providing medical care." Id. On July 11, 2018, Plaintiff was sent a letter noting that his claim was being accepted only as to the allegations of medical negligence purportedly occurring at FCI-Herlong starting December 15, 2016 (the date he arrived at FCI-Herlong) as the remainder of his claim had previously been investigated and denied with respect to Claim 1. See ECF Nos. 41-9, pg. 2 & 41-1, pg. 4.

On February 27, 2019, Plaintiff was notified that an investigation of Claim 2 had been conducted and his claim had been denied because it was determined that Plaintiff had "failed to establish that [he had] suffered a loss or personal injury as a result of staff negligence in this matter." ECF No. 41-10, pg. 2. See id. The letter informed Plaintiff that he had six months from the date of mailing with which to file a federal lawsuit. See id. Plaintiff filed his complaint on August 5, 2019. See ECF No. 1.

## II. DISCUSSION

In its motion to dismiss, Defendant United States argues: (1) Plaintiff's claims must be limited to those claims relating to medical malpractice between December 15, 2016, and December 14, 2017, consistent with Plaintiff's administrative tort claim; and (2) Plaintiff fails to state a claim for medical malpractice. See ECF No. 41-1. In a separate motion to dismiss, Defendant Allred argues: (1) Plaintiff fails to state a claim upon which relief can be granted; and (2) Defendant Allred is entitled to qualified immunity. See ECF No. 42-1.

### A. Administrative Tort Claim

Defendant United States argues that this case must be limited in scope to those claims and time periods alleged in Plaintiff's administrative tort claims under the FTCA. See ECF No. 41-1, pgs. 6-7. Despite filing four oppositions, Plaintiff fails to respond to the jurisdictional argument. See ECF Nos. 43, 48, 52, 53. The United States, as sovereign, can be sued only to the extent it has waived its sovereign immunity. See, e.g., Dep't of the Army v. Blue

Fox, Inc., 525 U.S. 255, 260 (1999). The FTCA provides that the United States may be held liable for personal injury caused by the "negligent or wrongful act or omission" of any government employee while "acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Veasley v. United States, 201 F.Supp.3d 1190, 1200 (S.D. Cal. 2016) (quoting 28 U.S.C. § 1346(b)(1)). The FTCA provides a remedy only for common law torts, such as negligence here. Tunac v. United States, 897 F.3d 1197, 1203 (9th Cir. 2018) (noting FTCA specifically grants jurisdiction to hear claims of medical negligence).

It is well-settled that the exhaustion requirement is jurisdictional in nature and must be interpreted strictly. See Cadwalder v. United States, 45 F.3d 297, 300 (9th Cir. 1995). An "action shall not be instituted upon a claim against the United States for money damages" unless the claimant has first exhausted administrative remedies. 28 U.S.C. § 2675(a). The Act establishes "explicit prerequisites to the filing of suit against the Government" in district court and "admits of no exceptions." Jerves v. United States, 966 F.2d 517, 521 (9th Cir. 1992). A district court cannot proceed without fulfillment of these conditions. See Vacek v. U.S. Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006).

An administrative claim must be in writing, specify the amount of damages sought, and be filed within two years of the claim's accrual. See 28 U.S.C. §§ 2401(b), 2675(a). A plaintiff may thereafter challenge the agency's final denial in federal district court only by filing an action within six months of the date of the mailing of the notice of final denial by the agency. See 28 U.S.C. § 2401(b). Thus, if a plaintiff fails to first present his claim to the appropriate agency and exhaust administrative remedies, the plaintiff's tort claims must be dismissed. Vacek, 447 F.3d at 1250 (holding "a court may not 'proceed in the absence of fulfillment of the [FTCA's] conditions merely because dismissal would visit a harsh result upon the plaintiff.'"); Foster v. Fed. Emerg. Mgmt. Agency, 128 F. Supp. 3d 717, 728 (E.D.N.Y. 2015) ("Failure to comply with [exhaustion] results in dismissal of the suit.").

///

///

In this case, Plaintiff's Claim 1 was denied on May 17, 2018, and he was notified he had six months within which to bring a federal lawsuit on these claims. See ECF No. 41-5, pg. 2. As such, Plaintiff was required to bring a federal lawsuit no later than November 17, 2018. Because Plaintiff filed the current lawsuit on August 5, 2019, the Court has no jurisdiction as to any allegations relating to Claim 1. As to Claim 2, Plaintiff's claim was denied on February 27, 2019, and was timely filed only as to allegations of medical negligence occurring at FCI-Herlong starting December 15, 2016 (the date he arrived at FCI-Herlong). See ECF Nos. 41-9, pg. 2 & 41-1, pg. 4. The remainder of Claim 2 had previously been denied in the context of Claim 1, over which this Court has no jurisdiction, as discussed above, because Plaintiff's lawsuit is untimely as to Claim 1. See id.

Furthermore, Defendant United States argues that any allegations for medical negligence purportedly occurring after December 14, 2017 – the date Claim 2 was signed and dated – is also barred. See ECF Nos. 41-1, pgs. 3-4. The undersigned agrees. Because Plaintiff must have first presented his claim to the appropriate federal agency and received a written denial by the agency before he can initiate a lawsuit, it follows that any purportedly unlawful conduct occurring after the date of the presentment of Claim 2 is barred for failure to comply with the exhaustion requirements. Therefore, because Plaintiff has not exhausted any administrative requirements for conduct purportedly occurring after December 14, 2017, any conduct that occurred after this date is outside the jurisdiction of this Court.

The undersigned recommends that any claims for medical malpractice occurring either before December 15, 2016, or after December 14, 2017, be dismissed with prejudice, as the period of time within which to file a lawsuit based on the government's denials of Plaintiff's claims has passed. This defect is jurisdictional and cannot be cured by amendment.

  **B.**  **Failure to State a Claim**

Both moving Defendants argue Plaintiff fails to state a claim upon which relief can be granted. Defendant United States contends Plaintiff cannot sustain a claim for medical malpractice under California law. See ECF No. 41-1, pgs. 8-11. Defendant Allred contends Plaintiff cannot sustain a claim for medical deliberate indifference under the Eighth Amendment.

7

See ECF No. 42-1, pgs. 3-6.

          1.        <u>Medical Malpractice Under California Law</u>

Under the FTCA, the law of the state where the claim occurred provides the substantive standards. See <u>Richards v. United States</u>, 369 U.S. 1, 11 (1962). Here, California law applies because FCI-Herlong is located in California. Under California law, a plaintiff alleging medical malpractice must show: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. See <u>Silong v. United States</u>, 2007 WL 2712100, at *5 (E.D. Cal. 2007). For the United States to be liable, the negligent actor must, as in this case, be an employee of the United States acting with the course and scope of employment. See 28 U.S.C. § 2675(a).

Plaintiff does not allege facts sufficient to support a claim of medical malpractice for actions occurring at FCI-Herlong during the period December 15, 2016, through December 14, 2017.[2] During the relevant time period, Plaintiff asserts only the following facts:

- Even after being transferred to FCI-Herlong on December 15, 2016, Plaintiff still had not had his right shoulder x-rayed. ECF No. 1, pgs. 9, 45.

- As of January 11, 2017, Plaintiff was experiencing "intense pain and suffering to the entire right side of his body." <u>Id.</u>, pgs. 9, 47-48.

- As of January 30, 2017, due to delay in medical treatment, Plaintiff had a "loss of visual acuity." <u>Id.</u>, pgs., 9, 49.

- As of May 8, 2017, "Plaintiff's shoulder still hadn't been set properly, and he had a phlanx [sic] of pain and sufferings (elsewhere) through his body . . . albeit an MRI was requested August 1, 2017 . . . for shoulder." <u>Id.</u> pgs. 9-10, 50-52.

- As of May 8, 2017, Plaintiff was still "seeing turquoise floaters in the right eye." <u>Id.</u>, pgs. 9-10, 53.

---

    [2]    To the extent Plaintiff argues his injuries were caused by the failure of government employees to protect him from any assault committed while incarcerated, see ECF No. 43, pg. 4, such conduct was the subject of Claim 1 and is outside the Court's jurisdiction for the reasons discussed above. See ECF No. 52, pg. 3 (asserting attack "created severe trauma to his body, i.e., severe shoulder injury, liver and kidney damages, and eye injury").

8

To survive a motion to dismiss, Plaintiff must first establish someone owed a duty to Plaintiff. Plaintiff fails to name in his complaint any particular medical provider during the relevant time period who owed Plaintiff a duty. Plaintiff asserts only that "each private independent doctor was deliberately indifferent to Plaintiff' serious medical needs. . . ." ECF No. 1, pgs. 9-11, 45-53. However, Plaintiff attaches to his complaint medical records identifying certain medical providers who evaluated Plaintiff during the relevant time period. See ECF No. 1, pgs. 45-53. Despite Plaintiff's general statement regarding the negligence of "each private independent doctor," Plaintiff has shown that he was under the care of certain medical providers during the relevant time period at the FCI-Herlong facility. See id.

Even though Plaintiff has provided medical records establishing that certain medical providers during the relevant time period owed Plaintiff a duty of care, he cannot show that such duty was breached. Plaintiff fails to sufficiently allege that any specific government employee breached a professional duty by not using the skill, prudence, or diligence as other members of the profession possess and exercise; in other words, that any particular employee provided a standard of care below that of other similarly situated medical professionals.

Plaintiff complains that his shoulder had not yet been x-rayed after being transferred to FCI-Herlong on December 15, 2016 and that Dr. Allred allowed him to be in pain without "obtaining the prescribed surgery." ECF No. 43, pg. 5; ECF No. 1, pgs. 9, 45. The record reflects that Plaintiff requested an x-ray on December 22, 2016 and received one on December 30, 2016. See id., pg. 46. While Plaintiff alleges that, as of May 8, 2017, Plaintiff's shoulder still hadn't "been set properly"—even though x-ray showed "no acute fracture or dislocation"—an MRI was requested August 1, 2017. See ECF No. 1, pgs. 9-10, 50-52. On August 17, 2021, Plaintiff received surgery on his shoulder. ECF No. 1, pgs. 45-46; ECF No. 43, pg. 5. While the time between the evaluations in December 30, 2016 and the surgery in August 2021 is lengthy, see id., these facts do not establish such delay is contrary to, or a breach of, any applicable standard of care. Any allegations or inferences by Plaintiff that his surgery was not performed timely, that Dr. Allred ignored Plaintiff's pain, or he was prevented from receiving adequate medical care are speculative and conclusory.

Plaintiff claims that he lost his eyesight due to not "having his urgent medical condition seen by a professionally trained eye doctor" and the "inordinate and extensive delays caused the permanent damages[]." ECF No. 48, pg. 2; ECF No. 1, pgs. 9, 49 (asserting "due to the delay in medical treatment, Plaintiff had a 'loss of visual acuity'"). Plaintiff claims "because the defendant did not follow medical protocol and regimen by the Ophthalmologist, that [he] needed to see an ENT specialist for his severe eye injury," he has lost the sight in his eye. ECF Nos. 52, pgs. 2-3 & 53, pg. 2. Plaintiff alleges that as of January 11, 2017, he was experiencing a "loss of visual acuity." ECF No. 1, pgs. 9, 47-49. The record reflects he was examined by a registered nurse on January 11, 2017. See id., pg. 48. Thereafter, on January 30, 2017, Plaintiff was seen by Dr. Allred and a consultation by ophthalmology for "cupping of disc with loss of visual acuity" was requested with a "target date" of April 30, 2017. According to Plaintiff, as of May 8, 2017, he was still seeing floaters. Id., pgs. 9-10, 49, 53. Medical records show Plaintiff received an ophthalmology consult in July 2017, and a further ENT consult was recommended by Dr. Tabor. See ECF 43, pgs. 10-11. In January 2018, Plaintiff received a consult with ENT and, in June 2018, Dr. Allred noted to "consider ENT f/u.". See ECF No. 1, pgs. 59, 65.

Plaintiff provides no facts to substantiate his assertion that any delays in seeing an ENT specialist caused him to lose his eyesight or that any purported delay in receiving further consultations regarding his eyesight was a breach of the applicable standard of care. See ECF No. 43, pg. 5, 10-11. Plaintiff's opinion as to the adequacy or appropriate standard of medical care is immaterial and insufficient. None of Plaintiff's allegations or medical records demonstrates any medical provider failed to provide adequate care to Plaintiff. In fact, the record abounds with medical records showing the care provided to Plaintiff, referrals to other providers for additional medical care, various medical evaluations, and surgical treatments. See e.g., ECF No. 1, pg. 59.

Plaintiff must further show a causal connection between the substandard medical care by a particular government employee and Plaintiff's claimed injuries. Assuming, that a particular government employee during the relevant time period provided substandard care, Plaintiff must also show that the purported substandard care was the proximate cause, or in close relation, to Plaintiff's resulting injury. The record is devoid of facts that any purported delay in

10

care with respect to his shoulder surgery or his eyesight was the proximate cause of his alleged injuries. See, e.g., ECEF No. 48, pg. 3. Plaintiff's opinions that the purported delays caused further injuries are speculative as the record does not support this conclusion.

Furthermore, Plaintiff's allegations that Dr. Allred prescribed the wrong medication causing damage to his liver and kidneys is not substantiated in the complaint nor in the medical records attached. See ECF No. 45, pg. 5; see also No. 48, pg. 3. At the outset, there are no facts to establish that such purported actions occurred during the relevant time period. Next, no facts have been asserted by Plaintiff to show that Dr. Allred prescribed the medication, the prescription was contrary to established medical care, or that the medication was the proximate cause of Plaintiff's purported injuries. Without facts establishing who prescribed the medication, that the medication was prescribed during the relevant time period of Claim 2, that the prescription is considered to be substandard medical care, and that the prescription was the actual cause of Plaintiff's alleged injuries, Plaintiff cannot demonstrate a claim for medical negligence here. Again, Plaintiff's belief as to the cause of his injuries is speculative and conclusory.

Finally, Plaintiff must show an actual loss or damage resulting from the medical provider's negligence. Plaintiff provides nothing more than opinions in this regard. Plaintiff generally claims, without factual support, medical malpractice by Dr. Allred and the staff at Herlong caused him to become permanently blind in one eye, Dr. Allred provided the wrong medication, which caused liver and kidney damage, and failure to timely receive an MRI or surgery for his shoulder injury caused Plaintiff to remain in pain while in the Herlong facility. See ECF No. 43, pgs. 6-7. Because Plaintiff does not demonstrate that there has been any substandard conduct on the part of any government employee, Plaintiff cannot show that his injuries were a result of any medical provider's negligent actions.

Therefore, as Plaintiff has failed to demonstrate that, during the relevant time period of Claim 2, reasonable and prudent care providers would have employed different care under the same or similar circumstances, the undersigned recommends dismissing Plaintiff's claim for medical malpractice with leave to amend.

    2.  Deliberate Indifference Under the Eighth Amendment

    The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer, 511 U.S. at 832. The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995). A prison official violates the Eighth Amendment only when objectively, the official's act or omission is so serious such that it results in the denial of the minimal civilized measure of life's necessities; and subjectively, the prison official acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, a prison official must have a "sufficiently culpable mind." See id. Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.

    An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness include whether a reasonable doctor would think that the condition is worthy of comment; whether the condition significantly impacts the prisoner's daily activities; and whether the condition is chronic and accompanied by substantial pain. McGuckin, 974 F.2d at 1059.

///
///
///

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See id. at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference, but where delay is alleged, the prisoner must also demonstrate that the delay led to further injury. See Lopez, 203 F.3d at 1131; McGuckin, 974 F.2d at 1060; see also Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) ("mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

Further, neither negligence in diagnosing or treating a medical condition nor a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment give rise to an Eighth Amendment claim. See Estelle, 429 U.S. at 106; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Generally, Plaintiff claims that Dr. Allred was deliberately indifferent to Plaintiff's serious medical need regarding his eye injury, providing the wrong medication that caused permanent liver and kidney damage, failing to seek surgery for his shoulder injury and allowing Plaintiff to remain in pain while in the Herlong facility.[3] See ECF No. 43, pg. 6. Furthermore, as Defendant Allred argues, Plaintiff's allegations pertaining to Dr. Allred and any alleged unlawful conduct is scant. Plaintiff submits medical records in support of his allegations, but Dr. Allred is scarcely mentioned as being a medical provider to Plaintiff. See ECF No. 1, pgs. 49, 59, 60, 64, & 65. Those portions of the complaint and medical records that do identify Dr. Allred as a medical provider are insufficient to establish that Dr. Allred was deliberately indifferent in his treatment, or purported lack thereof, of Plaintiff.

///

---

[3] Plaintiff was at FCI-Herlong only from December 15, 2016, through no later than September 6, 2018, when he was transferred to FMC Fort Worth, Texas. See ECF No. 1, pgs. 11, 67. Any purported constitutional violations against Dr. Allred are limited to the time period Plaintiff was at FCI-Herlong.

13

Here, Plaintiff sufficiently states facts to support the objective component. There are several medical records noting Plaintiff's injuries, how his conditions impacted his daily activities, and that he was in substantial pain due to his ailments. See, ECF No. 1, pgs. 59, 65. However, Plaintiff does not satisfy the subjective component that Dr. Allred consciously disregarded Plaintiff's pain or deprived Plaintiff of any medical treatment. The key inquiry is not whether Dr. Allred perfectly responded, complied with every guideline, or whether his efforts ultimately averted the risk; instead, the question is whether he reasonably responded or disregarded the risk. The record reflects that Dr. Allred reviewed Plaintiff's medical records, requested further consultations to address his eyesight, and evaluated the records regarding Plaintiff's shoulder injury and requested additional follow-up as it was not confirmed whether an MRI was promised or even needed. See ECF No. 1, pgs. 49, 59, 60, & 65.

The limited records pertaining to Dr. Allred shows that he "reviewed [Plaintiff's] medical file" "in an effort to ensure that issues have not been overlooked." ECF No. 1, pg. 59. Further, Dr. Allred evaluated Plaintiff and requested a consultation to ophthalmology to address Plaintiff's "visual acuity" issues. Id., pg. 49. In response to Plaintiff's complaints regarding his medications, Dr. Allred "discontinued or tapered" his medications to "protect him from devastating effects until seen" and that, once discontinued, Plaintiff felt "completely himself, without distress." Id., pg. 60. In response to Plaintiff's email sent to Dr. Allred on June 7, 2018 at 9:17 a.m., see ECF No. 1, pg. 64, Dr. Allred reviewed Plaintiff's file at 12:34 and noted that since Plaintiff arrived at FCI-Herlong in December 2016, he had received multiple evaluations including "CDx4, PAx4, RNx10, 15 Admin notes, psychology multiple times" and had been "seen by [a] provider" about every 4.5 months and by medical staff about every month. Id., pg. 65. As a result of Dr. Allred's review, he noted that Plaintiff had "inconsistent presentation, unconfirmed allegations of pain, incapacitation," to "[s]chedule for additional f/u," and that there was no confirmation "an MRI was promised; nor even indicated." Id. None of these facts support Plaintiff's allegations that Dr. Allred was deliberately indifferent to, or deprived Plaintiff of, any medical treatment, or acted unnecessarily and for the purpose of inflicting harm upon Plaintiff; quite the contrary.

As to Plaintiff's allegations that Dr. Allred provided the wrong medication to Plaintiff, which caused permanent liver and kidney damage, these allegations are unsubstantiated. See e.g., ECF No. 53, pg. 2. In response to an email from Plaintiff stating that "his current medications do nothing to address his constant pain and 'leave [him] sick, disoriented, depressed and in a constant state of semi-consciousness'," Dr. Allred reviewed and discontinued or tapered Plaintiff's medications in an effort to resolve Plaintiff's complaints. See ECF No. 1, pgs. 58-60. As stated above, Plaintiff has alleged no facts to show that Dr. Allred even prescribed the medication or that any purported prescription was contrary to established medical care. Plaintiff's belief as to Dr. Allred's role in prescribing the medication or that the medication ultimately caused his injuries is speculative, conclusory, and insufficient.

To the extent that Plaintiff is alleging that Dr. Allred delayed in providing medical treatment, Plaintiff's claim must also fail. Plaintiff must demonstrate that Dr. Allred's delay in providing medical treatment resulted in further injury to Plaintiff. With respect to Plaintiff's allegations that as of June 2018, "Dr. [Allred] still had not ordered an MRI of Plaintiff's [now] permanent shoulder injury," ECF No. 1, pg. 11, such statement that his injury is "permanent" is speculative—Plaintiff offers no facts to support this conclusion. While the facts show a delay between the dates of evaluations and surgery, such facts do not establish the delay caused further damage. Indeed, Plaintiff's medical records indicate the opposite: "'I have returned to being an orderly, working out recreation, push-ups, thera-band without any complaint or difficulty from my R shoulder"; "I am able to sleep on my R shoulder/R side without difficulty"; and "I am very pleased with the outcome from my surgery and rehabilitation." ECF No. 43, pg. 16. Any claims for medical indifference related to Dr. Allred's purported delay in obtaining shoulder surgery for Plaintiff are insufficient.

With respect to Plaintiff's allegations that Dr. Allred's delay in referring Plaintiff to an ENT for a consultation regarding "loss of visual acuity," id., pg. 49, there are no facts showing that it was Dr. Allred who caused any purported delay. The record indicates that Plaintiff did, in fact, have an ENT consult in January, 2018, and on June 7, 2018, Dr. Allred, suggested, after review of Plaintiff's records, to "consider ENT f/u." See id., pgs. 59 & 65. The record does

not reflect any facts to suggest that Dr. Allred delayed treatment for Plaintiff's eyes or that any delayed treatment caused Plaintiff further damage. Plaintiff's statements that the delay in treatment caused him to become permanently blind in one eye are conclusory, speculative, and without factual support. The complaint and medical records attached contain no allegations or factual support that plaintiff has gone blind, only loss of visual acuity. See ECF 44, pgs. 4-5, 7. To the extent Plaintiff argues that there was a delay in discontinuing medications, it appears from the medical records that Dr. Allred responded to Plaintiff's complaints shortly after receiving his email; thus, there is no support for Plaintiff's argument that there was a delay in discontinuing Plaintiff's medications once Dr. Allred was on notice of Plaintiff's complaints.[4]

Relatedly, to the extent that Plaintiff is alleging Dr. Allred should have provided a different course of treatment with respect to his shoulder, eyesight, or medications, a difference of opinion in medical treatment does not constitute deliberate indifference. Plaintiff fails to allege any facts to show that Dr. Allred's course of treatment was medically unacceptable under the circumstances or in conscious disregard of an excessive risk to Plaintiff's health. See e.g., ECF No. 1, pg. 67 (noting after transfer Texas medical provider was looking to "determine at what point[,] if any[,] will need to refer to Ortho and perform an MRI"). Without more, negligence in the provision of medical care does not violate the Eighth Amendment.

Therefore, Plaintiff has not alleged facts to state a claim for deliberate indifference as to Plaintiff's medical needs under the Eighth Amendment for which relief can be granted. The undersigned recommends Dr. Allred's motion to dismiss be granted with leave to amend.

### C. Qualified Immunity

Defendant Allred also argues he is entitled to qualified immunity. See ECF No. 42-1, pgs. 6-7. Because the undersigned recommends Dr. Allred's motion to dismiss be granted with leave to amend, Dr. Allred's argument of qualified immunity is premature and can be raised again with respect to allegations contained in any amended complaint.

///

---

[4] There is nothing in the record establishing it was Dr. Allred who prescribed the medication or that it was prescribed in conscious disregard to any adverse reaction.

## III. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendant United States' motion to dismiss, ECF No. 41, be granted as follows:

   a. Any claims for medical malpractice occurring either before December 15, 2016, or after December 14, 2017, be dismissed with prejudice for lack of jurisdiction, as the period of time within which to file a lawsuit based on the government's denials of Plaintiff's claims has passed.

   b. Any claims for medical malpractice occurring between December 15, 2016, and December 14, 2017, be dismissed with leave to amend.

2. Defendant Allred's motion to dismiss, EF No. 42, be granted with leave to amend; and

3. Plaintiff be directed to file a first amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 1, 2023

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE